UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDDIE LUCHES LEE,

        Petitioner,

v.

        CASE NO. 04-CV-74632-DT
        HONORABLE VICTORIA A. ROBERTS

BARRY DAVIS,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**

**I.    Introduction**

Eddie Luches Lee ("Petitioner"), a state prisoner presently confined at the Carson City Correctional Facility in Carson City, Michigan, has filed a *pro se* petition for writ of habeas corpus challenging his convictions for three counts of armed robbery, felonious assault, being a felon in possession of a firearm, and five counts of possession of a firearm during the commission of a felony ("felony firearm") which were imposed by the Oakland County Circuit Court in 2001. Petitioner was sentenced as a fourth habitual offender to concurrent terms of 28 to 50 years imprisonment on the armed robbery convictions, concurrent terms of 10 to 15 years imprisonment on the assault and felon in possession convictions, and concurrent terms of two years imprisonment on the felony firearm convictions, to be served consecutively to the other sentences, in 2002. In his pleadings, Petitioner raises claims concerning the admission of other

acts evidence, the admission of identification testimony, and the racial composition of the jury. For the reasons set forth below, the Court denies the petition for writ of habeas corpus.

**II.     Facts**

Petitioner's convictions arise from the robbery of a bank in Waterford, Michigan on July 17, 2000. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. Appx. 730 (6th Cir. 2002), as follows:

> On July 17, 2000, between 1:00 p.m. and 1:30 p.m., defendant went into the National City Bank in Waterford wearing a black hooded sweatshirt, black pants, black shoes, and wearing a mesh, fencing-type mask. Defendant had a gun in his hand. Defendant walked directly behind a patron, Anthony Zylinski, pushed him against the teller window, put the gun to his head, and announced that it was a bank robbery. Defendant threw a knapsack and duffel bag to the teller, demanded money, and told Zylinski not to move. The teller's legs buckled and she fell. Defendant ordered the teller to get up or he would shoot Zylinski. The teller pulled herself up and put the money in the duffel bag. The teller's legs buckled again and defendant told her that he would "blow her away" if she did not get up. Zylinski urged defendant to stay calm. The teller gave defendant approximately $3000.
>
> Defendant then went to the next teller window where Tammy Sue Cummings was working. When Cummings saw what was happening, she ducked down and hit the security button. Defendant told Cummings, "[p]ut the fucking money in the bag, bitch or I'm going to kill you ." Defendant told Cummings to hurry or he would "blow her head off." Cummings then put money in defendant's bag. [FN2] Before defendant left, a scuffle ensued between defendant and a customer, former police officer James A. Hildebrand. Defendant absconded with the money by foot.
>
> FN2. Cummings picked defendant's picture from a photographic line-up a few weeks after the robbery based upon the shape of defendant's head and height of his forehead. Defendant objected to the identification, however, this motion was denied.
>
> Nahia Majzoub testified during trial, because she was the victim of a similar robbery approximately three months earlier at a gas station. Majzaub testified that at approximately 2:00 to 3:00 p.m. on April 25, 2000, she and her husband were in the Sunoco gas station when defendant walked in, without a mask,

2

> wearing a hooded sweatshirt.  Defendant pointed the gun at both Majzaub and her husband and stated, "put the fucking money in the bag."  Defendant then became very angry and repeatedly swore at Majzaub and her husband.  Majzaub's husband gave defendant the money, and defendant absconded with the money on foot.  On October 18, 2000, Majzaub went to the police department and picked defendant out of a corporeal line-up as the person who robbed the gas station.
>
> Prior to trial, defendant objected to the use of one of the prosecution's peremptory challenges to strike an African American woman.  Defendant maintained the juror was removed solely based on race.  The trial court denied the objection.

*People v. Lee*, No. 239685, 2003 WL 21350366, *1 (Mich. App. June 10, 2003) (unpublished).

At the close of trial, the jury convicted Petitioner of three counts of armed robbery, one count of felonious assault, and four counts of felony firearm.  Petitioner then pleaded *no lo contendere* to being a felon in possession of a firearm and one count of felony firearm.  The trial court subsequently sentenced him as a fourth habitual offender to concurrent terms of 28 to 50 years imprisonment on the armed robbery convictions, concurrent terms of 10 to 15 years imprisonment on the assault and felon in possession convictions, and to concurrent terms of two years imprisonment on the felony firearm convictions,to be served consecutively to the other sentences.

## III.   Procedural History

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising several claims, including those raised in the present petition.  The Court of Appeals affirmed Petitioner's convictions and sentence.  *People v. Lee*, No. 239685, 2003 WL 21350366 (Mich. App. June 10, 2003) (unpublished).  Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the same claims, which was denied.  *People v. Lee*, 469 Mich. 972, 671 N.W.2d 880 (2003).

Petitioner thereafter filed the present habeas petition, asserting the following claims as grounds for relief:

I. The trial court reversibly erred in allowing the prosecutor to introduce other acts evidence.

II. The trial court reversibly erred in denying the defendant's pre-trial motion to suppress identification as to witness Tammy Sue Cummings.

III. The trial court reversibly erred in denying the defendant's *Batson* challenge during jury selection.

Respondent has filed an answer to the petition, contending that it should be denied for lack of merit.

**IV. Analysis**

**A. Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed this habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings

5

of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### B. Other Acts Evidence Claim

Petitioner first claims that he is entitled to habeas relief because the trial court erred in admitting other acts evidence of a similarly-executed gas station robbery committed by Petitioner. Respondent contends that this claim lacks merit.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994). The United States Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990).[1] Thus, "[t]here is no clearly established Supreme Court precedent which

---

[1] While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

6

holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id*. at 513; *see also Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Petitioner's claim must fail.

Furthermore, even if Petitioner states a cognizable claim, he is not entitled to relief in this case. The Michigan Court of Appeals upheld the trial court's determination that the disputed evidence was properly admitted because it was evidence of Petitioner's common scheme, plan, or system theory of logical relevance. The Court of Appeals also found that the probative value of the evidence was not substantially outweighed by its prejudicial effect. The Court of Appeals further noted that the trial court gave an appropriate limiting instruction to the jury. *See Lee*, 2003 WL 21350366 at *2.

The Michigan Court of Appeals' decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law or the facts. The disputed evidence was properly admitted under Michigan law to establish a common scheme, plan, or system. The prosecutor did not make a character or propensity argument and the trial court issued a cautionary instruction to the jury about the proper consideration of the other acts evidence. Petitioner has not shown that the admission of the disputed evidence rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

### C.     Identification Testimony Claim

Petitioner next alleges that he is entitled to habeas relief because the trial court failed to suppress the identification testimony of witness Tammy Sue Cummings, which he claims was

tainted by an unduly suggestive photographic array shown to Cummings prior to trial. Respondent contends that this claim lacks merit.

A conviction based on identification testimony following pre-trial identification violates due process when the pre-trial identification procedure is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). An in-court identification by a witness to whom the accused was exhibited before trial in an unduly suggestive manner must be excluded unless it can be established that the identification has an independent origin which is not tainted by the suggestive pre-trial identification procedures. *See Wade v. United States*, 388 U.S. 218, 241 (1967).

A two-step analysis applies to decisions concerning the admissibility of identification evidence. First, a court must determine whether the identification procedure was impermissibly suggestive. Second, if the court finds that the identification procedure was impermissibly suggestive, the court must determine whether, under the totality of the circumstance, the testimony was nevertheless reliable. *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992). "If the defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification was otherwise reliable, then no due process violation has occurred." *Id.*

The United States Supreme Court has declared that "reliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). In *Neil v. Biggers*, 409 U.S. 188, 198-99 (1972), the Supreme Court listed five factors that should be considered when evaluating reliability: (1) the witness's opportunity to

8

view the perpetrator during the crime; (2) the witness's degree of attention during the crime; (3) the accuracy of the witness's prior description of the perpetrator; (4) the witness's level of certainty when identifying the defendant at the confrontation; and (5) the length of time that has elapsed between the crime and the confrontation.  "The degree of reliability of the identification, as indicated by the above-stated factors, is to be considered in light of the degree of suggestiveness of the identification procedure and of the totality of the circumstances in determining whether due process requires suppression of the identification.  *See Manson*, 432 U.S. at 113-14; *Carter v. Bell*, 218 F.3d 581, 605 (6th Cir. 2000).

In this case, the Michigan Court of Appeals ruled that the photographic array was not impermissibly suggestive.  The Court of Appeals explained that witness Cummings was shown six color photographs of African-American males with similar facial hair and haircuts.  While the Court of Appeals acknowledged that Petitioner was the only one wearing a hooded sweatshirt in the photographs, the Court noted that the hood was down and that Cummings based her identification upon the shape of Petitioner's head and the height of his forehead, not on his clothing.  *See Lee*, 2003 WL 21350366 at *3.

Having reviewed the record, this Court concludes that the Michigan Court of Appeals' determination in this regard is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law or the facts in light of the evidence.   The photographic array shown to witness Cummings was not unduly suggestive.  The array contained six photographs of similar size and color.  The individuals depicted in those photographs were all African-American, generally fit the description of the perpetrator, and had similar facial hair and haircuts.  Petitioner has not shown that any dissimilarities were so significant as to

invalidate the photographic array. The fact that Petitioner was the only person wearing a hooded sweatshirt is not significant because the hood was down and Cummings testified that she identified Petitioner by the shape of his head and his forehead, not his clothing. Lastly, the fact that Cummings had not seen the perpetrator's skin color does not invalidate the photographic array. Cummings testified that she believed the perpetrator was black based upon his voice. Additionally, all of the individuals depicted in the array were African-American. Petitioner has thus failed to establish a violation of his constitutional rights. Habeas relief is not warranted on this claim.

        **D.**      **Jury Composition Claim**

Lastly, Petitioner asserts that he is entitled to habeas relief because the prosecutor improperly exercised a peremptory challenge to excuse an African-American woman from the jury based upon her race. Respondent contends that this claim lacks merit.

Although a criminal defendant has no right to have a member of a particular race on his jury, he does have the right to be tried by a jury whose members are selected by non-discriminatory criteria. *See Powers v. Ohio*, 499 U.S. 400, 404 (1991); *Taylor v. Louisiana*, 419 U.S. 522, 527-28 (1975). The Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from challenging potential jurors solely on account of their race. *See Batson v. Kentucky,* 476 U.S. 79, 89 (1986); *Lancaster v. Adams*, 324 F.3d 423, 432-33 (6th Cir. 2003). To established a prima facie case of purposeful discrimination in the selection of a *petit* jury solely based upon the prosecutor's exercise of peremptory challenges, a defendant must show that he is a member of a cognizable racial group and that the prosecutor used peremptory challenges to remove members of the defendant's race from the jury. The defendant must also

show that other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors from the jury on account of their race. Relevant circumstances include the pattern of strikes and the prosecutor's questions and statements. *Batson*, 476 U.S. at 96-97.

Once the defendant makes a *prima facie* showing, the burden then shifts to the prosecutor to offer a "race neutral explanation" for challenging the jurors. *Id.* at 97. A "race neutral" explanation is one based upon something other than the juror's race. The issue is the facial validity of the prosecutor's explanation. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York,* 500 U.S. 352, 360 (1991). The defendant bears the final burden of proving purposeful discrimination. *Batson*, 476 U.S. at 98.

The Michigan Court of Appeals declined to address this distinct issue[2] because Petitioner failed to support his *Batson* argument with any authority. *See Lee*, 2003 WL 21350366 at *4 n. 3.[3] Because the Michigan Court of Appeals did not address this issue on the merits, this Court must conduct an independent review of the state court's decision. *See Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. This

---

[2]The Michigan Court of Appeals addressed and denied Petitioner's related claim that minorities were systematically excluded from the jury venire. Petitioner does not raise this "fair cross-section" claim on habeas review.

[3]Respondent does not allege that the Court of Appeals' decision results in a procedural default, but instead addresses the substance of Petitioner's claim. This Court will do likewise.

independent review "is not a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id*.

Having reviewed the state court record, this Court finds that the Michigan Court of Appeals' denial of relief on this claim is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law or the facts. The record does not reveal any evidence of purposeful discrimination by the prosecution in exercising the contested peremptory challenge. The mere fact that the prosecution exercised a peremptory challenge to excuse an African-American venire person from the jury, standing alone, is insufficient to establish a prima facie case of discrimination. *See United States v. Sangineto-Miranda*, 859 F.2d 1501, 1521 (6th Cir. 1988); *see also Williams v. Woodford*, 306 F.3d 665, 681 (9th Cir. 2002); *Anderson v. Cowan*, 227 F.3d 893, 901-02 (7th Cir. 2000) (fact that prosecution used peremptory challenges to exclude two African-American women from jury, without more, was insufficient to raise inference of discrimination). A court considering a *Batson* challenge must look to all the relevant circumstances, including the number of strikes against jurors of a particular racial group and the prosecution's questions and comments during voir dire. *See Batson*, 476 U.S. at 97. A court may also consider factors such as the racial composition of the jury venire and the final jury panel, the number of peremptory challenges and their manner of execution, and the race of all jurors who are excused from service (whether for cause or peremptorily). *See Sangineto-Miranda*, 859 U.S. at 1520. In this case, Petitioner points to no facts, other than the striking of one African-American woman, to support his *Batson* claim.

Furthermore, the Court's review of the record demonstrates that the relevant

12

circumstances negate an inference of discrimination. The prosecution did not question any of the jurors in an unusual, distinct, or discriminatory manner nor did the prosecution make any comments reflecting any bias or discriminatory intent. The voir dire transcript indicates that the prosecution had sufficient, non-discriminatory reasons to excuse the juror in question – her employment at a bank and the way in which she responded to questions imposed by defense counsel. Additionally, it appears that at least one African-American remained on the jury and was not challenged by the prosecution. Given these circumstances, Petitioner has not shown that the prosecution unconstitutionally exercised peremptory challenges to excuse African-Americans from his jury. Habeas relief is not warranted on this claim.

**V.     Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to habeas relief on the claims contained in his petition. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for writ of habeas corpus.

**IT IS SO ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: February 1, 2006

> The undersigned certifies that a copy of this document was served on the attorneys of record and petitioner by electronic means or U.S. Mail on February 1, 2006.
>
> s/Carol A. Pinegar
> Deputy Clerk

13